UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 4100
Washington, DC 20530,

*Plaintiff*,

v.

Civil Action No.:

B.S.A. S.A.,
33 Avenue du Maine
Paris, France 75015,

LAG HOLDING, INC.,
2376 South Park Avenue
Buffalo, NY 14220,

and

THE KRAFT HEINZ COMPANY,
One PPG Plaza
Pittsburgh, PA 15222,

*Defendants*.

## COMPLAINT

The United States of America brings this civil antitrust action to enjoin B.S.A. S.A. and its subsidiary, LAG Holding, Inc. (together "Lactalis"), from acquiring the natural cheese business of The Kraft Heinz Company ("Kraft Heinz") in the United States. This combination would bring together the two largest suppliers of feta cheese in the United States and the two largest suppliers of ricotta cheese in the metropolitan and surrounding area of New York, New York, and in four metropolitan and surrounding areas in Florida. As a result, the proposed

combination of Lactalis and Kraft Heinz would likely lead to higher prices, lower quality, and reduced choice for retail consumers of these cheeses, at a time when many Americans are struggling to meet rising food prices. The transaction should be enjoined to prevent American consumers from suffering these likely anticompetitive harms. The United States alleges as follows:

## I.   NATURE OF THE ACTION

1.       Grocery and supermarket purchases account for a significant portion of the household budget for American families, and Americans' food bills are rising. According to the USDA's Economic Research Service, grocery prices have increased in 2021, and are expected to further increase in 2022, putting more pressure on American consumers who are struggling to make ends meet. Competition plays an important role in keeping down the prices for grocery items, such as cheese, that Americans purchase and use every day.

2.       B.S.A. S.A. is one of the world's largest dairy companies, manufacturing and selling cheese in the United States through its subsidiaries, LAG Holding, Inc. and Lactalis American Group, Inc. In the United States, Lactalis sells natural cheeses primarily under the Galbani and Président brand names. Kraft Heinz is one of the largest food products and beverage companies in the world. Kraft Heinz is also the largest supplier of natural cheeses to grocery stores and other retail outlets in the United States, selling natural cheeses primarily under the Kraft, Cracker Barrel, Athenos, and Polly-O brand names.

3.       On September 15, 2020, B.S.A. S.A. agreed to pay approximately $3.2 billion to acquire Kraft Heinz's (1) natural cheese business in the United States, which includes feta, ricotta, and many other types of cheeses, but excludes processed cheese and cream cheese, (2)

grated cheese business in Canada, and (3) entire cheese business outside North America (the "proposed transaction").

4.      The proposed transaction would combine the two largest suppliers of feta cheese sold to retailers in the United States, and the two largest suppliers of ricotta cheese sold to retailers in five metropolitan and surrounding areas located in New York and Florida. If allowed to proceed, the merged firm's brands would control approximately 65% of all retail feta sales (brands and private label) nationwide, with its next closest branded competitor controlling approximately 6% of retail feta sales. For ricotta, the merged firm's brands would control approximately 70% of all retail sales (brands and private label) in the metropolitan and surrounding area of New York, New York, with its next closest branded competitor controlling approximately 7% of retail ricotta sales in that market. And in each of the four metropolitan and surrounding areas in Florida identified below, the merged firm's brands would control over 65% of all retail ricotta sales (brands and private label), with its next closest branded competitor in each of the markets controlling no more than 2% of retail ricotta sales.

5.      Defendants are particularly close competitors for the sale of feta (through Lactalis's Président brand and Kraft Heinz's Athenos brand) and ricotta (through Lactalis's Galbani brand and Kraft Heinz's Polly-O brand) to retailers. These strong brands allow Lactalis and Kraft Heinz to compete aggressively with each other in the sale of feta and ricotta cheese in the relevant markets, which has resulted in lower prices and innovative products, such as Lactalis's double cream ricotta cheese and Kraft Heinz's flip top container for Athenos crumbled feta cheese, that benefit consumers.

6.      The proposed transaction would eliminate this competition, likely leading to higher prices, reduced innovation, and fewer choices for these products for retailers in the

relevant markets.  For these reasons, the proposed transaction is likely to substantially lessen competition in the sale of feta and ricotta cheeses in the relevant markets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.  The Court should, therefore, enjoin the proposed transaction.

## II.    JURISDICTION AND VENUE

7.    The United States brings this action pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

8.    Defendants sell cheeses, including feta and ricotta, in the flow of interstate commerce, and their sale of these products substantially affects interstate commerce, including in this judicial district.  This Court therefore has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

9.    Defendants have each consented to personal jurisdiction and venue in this judicial district for purposes of this action.  Venue is therefore proper in this district under 28 U.S.C. §§ 1391(b) and (c).

## III.    THE DEFENDANTS

10.    B.S.A. S.A. is a French company operating under the name Lactalis Group. B.S.A. S.A. is a corporation organized and existing under the laws of France, with its headquarters in Laval, France.  It is one of the largest dairy companies in the world.

11.    LAG Holding, Inc. is a subsidiary of B.S.A. S.A.  It is a Delaware corporation with its headquarters in Buffalo, New York.  LAG Holding, Inc. and its subsidiary, Lactalis

American Group, Inc., generated natural cheese sales of approximately $429 million at retail outlets in the United States in 2020.

12.     Kraft Heinz is a Delaware corporation co-headquartered in Pittsburgh, Pennsylvania, and Chicago, Illinois.   Kraft Heinz is one of the largest food products and beverage companies in the world.   Retail sales of its natural cheeses in the United States amounted to over $2.2 billion in 2020.

## IV.    RELEVANT MARKETS

13.     A typical starting point for merger analysis is defining a relevant market, which has both a product and a geographic dimension.   Courts define relevant markets to help determine the areas of competition most likely to be affected by a merger.   As described below, both feta cheese sold to retailers across the United States and ricotta cheese sold to retailers in the metropolitan and surrounding area of New York, New York (the "New York Metro Market") and in four metropolitan and surrounding areas in Florida—Miami/Ft. Lauderdale, Tampa/St. Petersburg, Orlando, and Jacksonville (collectively, the "Florida Metro Markets")—are relevant markets.

### A.     Relevant Product Markets

14.     Cheeses are sold to retailers as branded cheeses or private label cheeses. A branded cheese bears a brand name controlled by the cheese supplier (*e.g.*, Kraft Heinz's Athenos and Polly-O brands and Lactalis's Président and Galbani brands).   A branded cheese is usually carried by multiple retailers.   A private label cheese is usually sold under a name owned by the retailer (*e.g.*, Wal-Mart's Great Value private label), and is typically offered only in that retailer's stores.

15.     Grocery stores and other food retailers act as proxies for individual consumers and seek to offer the variety of products demanded by their customers.  As a result, retailers strive to carry products and brands that their customers value, and may vary their offerings to meet local customer demand.  For example, Polly-O was founded over 100 years ago in the New York City area, where it became quite popular.  As residents of the New York City area visited or moved to Florida, they took their Polly-O brand loyalty with them.  Thus, Polly-O ricotta cheese has greater competitive significance in grocery stores and other retailers in the New York Metro Market and the Florida Metro Markets than in other areas of the country.

### 1.   Ricotta Cheese Sold to Retailers is a Relevant Product Market

16.     Ricotta is a soft cheese that originated in Italy.  It is primarily used as an ingredient in food dishes.

17.     There are no reasonable substitutes for ricotta cheese for most consumers.  A hypothetical monopolist supplier of ricotta cheese to retailers likely would find it profitable to increase its prices by at least a small but significant non-transitory amount.  Consumers are unlikely to sufficiently reduce their purchases of ricotta cheese or shift to a different cheese or other products to render such a price increase unprofitable.  As a result, retailers, buying on behalf of the consumer, are also unlikely to sufficiently reduce purchases of ricotta cheese to render such a price increase unprofitable.  Accordingly, ricotta cheese sold to retailers is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act.

18.     Defining a market for ricotta cheese that is sold to retailers is consistent with industry recognition and practice. Suppliers of ricotta cheese to retailers typically (1) monitor the retail prices of competing ricotta cheeses and set their prices and promotional spending

accordingly, (2) do not set the price they charge for ricotta cheese based on the prices of other cheeses or other consumer products, (3) track their sales to retailers separately from their sales to other distribution channels (*i.e.*, foodservice and the ingredients or industrial channels), (4) have sales employees dedicated to serving retailers, and (5) sell ricotta cheese to retailers in packaging and package sizes that are different than that used for ricotta sold through other distribution channels. These factors further support that ricotta cheese sold to retailers is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act.

### 2. Feta Cheese Sold to Retailers is a Relevant Product Market

19.     Feta cheese originated in Greece. It is primarily used as an ingredient in food dishes.

20.     There are no reasonable substitutes for feta cheese for most consumers. A hypothetical monopolist supplier of feta cheese to retailers likely would find it profitable to increase its prices by at least a small but significant non-transitory amount. Consumers are unlikely to sufficiently reduce their purchases of feta cheese or shift to a different cheese or other products to render such a price increase unprofitable. As a result, retailers, buying on behalf of the consumer, are also unlikely to sufficiently reduce purchases of feta cheese to render such a price increase unprofitable. Accordingly, feta cheese sold to retailers is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act.

21.     Defining a market for feta cheese that is sold to retailers is consistent with industry recognition and practice. Suppliers of feta cheese to retailers typically (1) monitor the retail prices of competing feta cheeses and set their prices and promotional spending accordingly, (2) do not set the price they charge for feta based on the prices of other cheeses or other consumer products, (3) track their sales to retailers separately from their sales to other

distribution channels, (4) have sales employees dedicated to serving retailers, and (5) sell feta cheese to retailers in packaging and package sizes that are different than that used for feta sold through other distribution channels. These factors further support that feta cheese sold to retailers is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act.

**B.    Relevant Geographic Markets**

22.    The relevant geographic markets for analyzing the effects of the proposed transaction on competition for feta and ricotta cheeses sold to retailers are best defined by reference to the locations of the retailers that purchase feta and ricotta cheeses in order to then sell those products to consumers.

23.    This approach to defining the relevant geographic markets is appropriate because suppliers of feta and ricotta cheeses to retailers assess the competitive conditions in particular localities, including local demand for feta and ricotta cheeses, as well as local demand for the suppliers' own brands as compared to competing brands or to private label offerings. As a result, suppliers of feta and ricotta cheeses can charge different prices, or offer different levels of promotional funding, to retailers in different locations based on local competitive conditions. If targeted for a price increase or reduction in promotional funding, retailers in a given locality would be unlikely to be able to render such conduct unprofitable by purchasing feta or ricotta cheeses outside of the relevant geography and transporting it to their retail location.

24.    Where ricotta and feta cheese suppliers can successfully vary prices and promotional funding based on retailer customer location, the goal of geographic market definition is to identify the area encompassing the location of potentially targeted customers.

The relevant geographic markets identified below encompass the locations of retailers that would likely be targeted by suppliers for price increases as a result of the proposed transaction.

      1.   **The Relevant Geographic Markets for Ricotta Cheese Sold to Retailers Are the New York Metro Market and the Florida Metro Markets**

      25.    The relevant geographic markets for the sale of ricotta cheese to retailers that will be harmed by the proposed transaction are the New York Metro Market and the Florida Metro Markets. In each of these markets, Defendants compete vigorously with each other for sales of ricotta cheese to retailers that resell those products to consumers. Defendants' Polly-O and Galbani ricotta brands combined would account for approximately 70% of all ricotta cheese sales by retailers in the New York Metro Market and over 65% of all ricotta cheese sales by retailers in each of the Florida Metro Markets.

      26.    A hypothetical monopolist supplier of ricotta cheese to retailers in the New York Metro Market and in each of the Florida Metro Markets likely would increase its price by at least a small but significant and non-transitory amount. Therefore, the New York Metro Market and each of the Florida Metro Markets are relevant geographic markets and sections of the country within the meaning of Section 7 of the Clayton Act.

      2.   **The Relevant Geographic Markets for Feta Cheese Sold to Retailers Are Individual Metropolitan and Surrounding Areas, but can be Analyzed on a National Basis for Convenience**

      27.    The relevant geographic markets for the sale of feta cheese to retailers may be defined as narrowly as individual metropolitan and surrounding areas. A hypothetical monopolist supplier of feta cheese to retailers in any given metropolitan and surrounding area in the United States likely would find it profitable to increase its prices by at least a small but significant and non-transitory amount. Therefore, each metropolitan and surrounding area in the

United States is a relevant geographic market and section of the country within the meaning of Section 7 of the Clayton Act.

28.     In circumstances where competitive conditions are similar, it is appropriate to aggregate local markets into a larger relevant market for analytical convenience. The competitive conditions across the country are similar for the sale of feta cheese to retailers who purchase the cheese for resale to consumers. Kraft Heinz's Athenos feta and Lactalis's Président feta are the two top-selling feta cheese brands in the United States, and combined, the two brands would account for approximately 65% of all feta cheese sales by retailers nationally. While some regional brands of feta cheese exist, none place a significant competitive constraint on Defendants in any particular metropolitan and surrounding area. Therefore, it is appropriate to analyze competition for the sale of feta cheese to retailers on a national basis.

## V.     THE PROPOSED TRANSACTION IS LIKELY TO SUBSTANTIALLY LESSEN COMPETITION FOR THE SALE OF RICOTTA AND FETA CHEESES TO RETAILERS

29.     The proposed transaction would combine the two largest suppliers of ricotta cheese to retailers in the New York Metro Market and in each of the Florida Metro Markets, and the two largest suppliers of feta cheese to retailers nationally, resulting in a substantial increase in concentration in these markets.

30.     The Supreme Court has held that mergers that significantly increase concentration in already concentrated markets are presumptively anticompetitive and therefore presumptively unlawful. To measure market concentration, courts often use the Herfindahl-Hirschman Index ("HHI") as described in the *U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines*. HHIs range from 0 in markets with no concentration to 10,000 in markets where one firm has a 100% market share. According to the *Horizontal Merger*

10

*Guidelines*, mergers that increase the HHI by more than 200 and result in an HHI above 2,500 in any relevant market or line of commerce are presumed to be anticompetitive and, therefore, unlawful.

31.     The proposed transaction would eliminate substantial head-to-head competition between Defendants in both ricotta and feta cheese sales to retailers, leading to higher prices, lower quality, and less innovation for these products in the relevant markets.

32.      The significant increase in market concentration that the proposed transaction would produce in the relevant markets, combined with the loss of head-to-head competition between Defendants, is likely to substantially lessen competition in violation of Section 7 of the Clayton Act.

A.     **The Proposed Transaction is Presumptively Unlawful and is Likely to Substantially Lessen Head-to-Head Competition for the Sale of Ricotta Cheese to Retailers**

33.     In the New York Metro Market, Defendants are the two largest suppliers of ricotta cheese to retailers, and their Polly-O and Galbani ricotta cheese brands combined would account for approximately 70% of all ricotta cheese sales by retailers in that market. In the New York Metro Market, the proposed transaction would increase the HHI by more than 2,400 points, resulting in a highly concentrated market with a post-acquisition HHI of more than 5,000 points. Thus, the proposed transaction is presumptively unlawful in the New York Metro Market.

34.     In each of the Florida Metro Markets, Defendants are also the two largest suppliers of ricotta cheese to retailers, and their Polly-O and Galbani ricotta cheese brands combined would account for over 65% of all ricotta cheese sales by retailers. In each of the Florida Metro Markets, the proposed transaction would increase the HHI by more than 1,500 points, resulting in highly concentrated markets, each with a post-acquisition HHI of more than

11

4,400 points.  Thus, the proposed transaction is presumptively  unlawful  in each of the Florida
Metro Markets.

35.     Defendants are particularly  close competitors  for ricotta cheese sold to retailers in
the New York Metro Market and the Florida  Metro Markets.  They compete aggressively with
each other on pricing  and promotions  for ricotta cheese and in offering new and innovative
products and features, such as double  cream ricotta and packaging  design.

36.     The president of the Lactalis American Group Retail Division  recognized  this fact
in February 2019, noting that, "through  aggressive pricing  we managed to grow the Galbani
share at the expense of [Kraft Heinz's] Poly-O [*sic*] from 2015 to 2018" in the ricotta cheese
category.  Additionally,  in January 2020, a Lactalis senior sales manager learned of an Easter
price promotion  on ricotta cheese that Polly-O was offering in the Northeast.  Lactalis responded
by improving  its own Easter price promotion  on ricotta cheese.

**B.      The Proposed Transaction is Presumptively Unlawful  and is Likely to
Substantially  Lessen Head-to-Head Competition for the Sale of Feta Cheese to
Retailers**

37.     Defendants are the two largest suppliers  of feta cheese to retailers  in the United
States, and their Athenos and Président feta cheese brands combined  would  account for
approximately  65% of all feta cheese sales by retailers nationally.   In a national  market for feta
cheese sold by retailers, the proposed transaction would  increase the HHI by more than 2,100
points, resulting  in a highly  concentrated market with a post-acquisition  HHI of more than 4,300
points.  Thus, the proposed  transaction is presumptively  unlawful.

38.     Defendants are particularly  close competitors  for feta cheese sold to retailers  in
metropolitan  and surrounding  areas throughout the United States. Kraft Heinz's Athenos brand
and Lactalis's Président brand are the two top-selling  retail brands of feta cheese sold in the

United States.  A Lactalis executive referred to them as the "two national leaders" in feta cheese. They compete vigorously on prices, promotions, flavor, texture, variety (*e.g.*, fat free, traditional), and quality.

39.     For example, in November 2020, a national sales manager at Kraft Heinz lamented that Kraft Heinz was "in a really bad position" at a supermarket chain because it "lost the feta business in March when [we] were undercut by Lactalis."  Similarly, a Lactalis marketing plan for feta cheese identified an objective of "steal[ing] market share from [Kraft Heinz's] Athenos" in 2021.

## VI.     ABSENCE OF COUNTERVAILING FACTORS

40.     New entry and expansion by competitors are unlikely to be timely and sufficient enough to offset the proposed transaction's likely anticompetitive effects.  Barriers to entering these markets are high and include the substantial time and expense required to build a brand's reputation and overcome existing consumer preferences through promotional and advertising activity as well as the substantial sunk costs needed to secure the distribution and placement of a new entrant's products in retail outlets (*e.g.*, paying slotting fees to obtain shelf space at supermarkets and other food retailers).

41.     The proposed transaction is unlikely to generate verifiable, merger-specific efficiencies sufficient to reverse or outweigh the anticompetitive effects that are likely to occur as a result of the proposed transaction.

## VII.    VIOLATIONS ALLEGED

42.     The United States hereby incorporates the allegations of paragraphs 1 through 41 above as if set forth fully herein.

43.     The proposed transaction is likely to substantially lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

44.     Unless enjoined, the proposed transaction would likely have the following anticompetitive effects, among others:

a.     substantially lessening head-to-head competition between Defendants for the sale of feta cheese to retailers in the United States and ricotta cheese to retailers in the New York Metro Market and in each of the Florida Metro Markets;

b.     substantially lessening competition generally in the market for feta cheese sold to retailers in the United States and ricotta cheese sold to retailers in the New York Metro Market and in each of the Florida Metro Markets;

c.     causing prices to be higher than they would be otherwise for feta cheese sold to retailers in the United States and ricotta cheese sold to retailers in the New York Metro Market and in each of the Florida Metro Markets; and

d.     reducing choice and innovation for feta cheese sold to retailers in the United States and ricotta cheese sold to retailers in the New York Metro Market and in each of the Florida Metro Markets.

## VIII.     REQUEST FOR RELIEF

45.     The United States requests that the Court:

a.     adjudge and decree the proposed transaction to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

b.      permanently enjoin and restrain Defendants and all persons acting on their behalf from carrying out the proposed transaction, or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine Defendants in the relevant markets alleged above;

c.      award the United States its costs for this action; and

d.      award the United States such other relief as the Court deems just and proper.

Dated: November 10, 2021

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**

_____/s/ Richard A. Powers_____
RICHARD A. POWERS
Acting Assistant Attorney General
Antitrust Division

_____/s/ Kathleen S. O'Neill_____
KATHLEEN S. O'NEILL
Senior Director of Investigations and Litigation
Antitrust Division

_____/s/ Eric D. Welsh_____
ERIC D. WELSH (DC Bar #998612)
Chief
Healthcare and Consumer Products Section
Antitrust Division

_____/s/ Andrew J. Robinson_____
ANDREW J. ROBINSON (DC Bar #1008003)
Assistant Chief
Healthcare and Consumer Products Section
Antitrust Division

_____/s/ Justin M. Dempsey_____
JUSTIN M. DEMPSEY* (DC Bar #425976)
GIANCARLO R. AMBROGIO (DC Bar #1736460)
CHRIS HONG
GARRETT M. LISKEY (DC Bar #1000937)
NATALIE R. MELADA

Attorneys for the United States
United States Department of Justice
Antitrust Division
Healthcare and Consumer Products Section
450 Fifth Street NW, Suite 4100
Washington, DC 20530
Telephone: (202) 307-5815
Facsimile: (202) 307-5802
Email: Justin.Dempsey@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED